

FILED

2014 Oct-02  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GARY VOKETZ, for himself and on behalf )
of the citizens of Decatur, Alabama, and the )
State of Alabama, )
           )
         Plaintiff, )
           )
v. )
           )  CASE NO. 5:14-CV-540-AKK
THE CITY OF DECATUR, ALABAMA, a )
municipal corporation, THE CITY )
COUNCIL OF DECATUR, DON KYLE, )
ROGER ANDERS, BILLY JACKSON, )
GARY HAMMON, CHARLES KIRBY, )
and CHUCK ARD, in both their individual )
and official capacities, )
           )
         Defendants. )
           )
and )
           )
AL ROBINSON, DORIS A. BAKER, DR. )
SAMUEL T. KING, and ANNIE R. )
PRIEST, )
           )
         Intervenor-Defendants )

## SUMMARY JUDGMENT BRIEF OF DEFENDANTS TO CLAIMS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT

**George W. Royer, Jr.**
**LANIER FORD SHAVER & PAYNE, P.C.**
**Post Office Box 2087**
**Huntsville, Alabama 35804**

**James U. Blacksher**
**Post Office Box 636**
**Birmingham, Alabama 35201**

*Attorneys for Defendants City of Decatur, Alabama, City*
*Council of Decatur, Don Kyle, Roger Anders, Billy*
*Jackson, Gary Hammon, Charles Kirby, and Chuck Ard*

## TABLE OF CONTENTS

A.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

B.    Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

C.    Undisputed Material Facts Relevant To the Section 5 Defense. . . . . . . . . .   6

D.    *Shelby County v. Holder* Does Not Make Enforceable the Change In
      Form of Government and Method of Electing Council Members That
      Failed To Receive Section 5 Preclearance Before the 2012 Decatur
      Elections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

      1.    The New Rule of *Shelby County v. Holder* Applies
            Prospectively. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

      2.    *Shelby County* Does Not Apply Retroactively To Decatur's
            Change In Form of Government and Method of Election . . . . . . .   18

E.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

      CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

A.  <u>Introduction</u>.

The amended complaint contends that the City of Decatur defendants are required to implement the form of government and method of election required under the Council-Manager Act of 1982.  Alternatively, plaintiff alleges that if the method of electing council members mandated by the Council Manager Act of 1982 violated the federal Voting Rights Act when the change in form of government was approved by Decatur's voters in 2010, plaintiff has judicially enforceable individual rights under state law to require Decatur to implement the change to a city manager form of government using a method of electing council members that will comply with the Voting Rights Act.

Putting aside plaintiff's novel state law claims, the amended complaint erroneously presumes that the Council Manager Act's conflict with the Voting Rights Act could be cured by modifying the method of electing council members, leaving the city manager position in place.  That presumption is wrong, because the change from an elected chief executive officer (mayor) to an appointed chief executive officer (city manager) was also a change affecting voting that required preclearance under Section 5 of the Voting Rights Act.  Because the change to a council-manager form of government did not receive preclearance before its statutory implementation date in 2012, the 2010 referendum now is a dead letter; neither the change to a city manager

nor the change in electing council members is enforceable today, as a matter of federal law.

This motion for summary judgment addresses only the threshold Section 5 defense.  There are no material disputed facts regarding the Section 5 issue; its resolution presents a pure question of law.  Namely, does *Shelby County v. Holder*, 133 S.Ct. 2612 (2013), make the results of the 2010 referendum enforceable today? It does not do so, because the change of law announced in *Shelby County* operates only prospectively.  That conclusion makes it unnecessary to consider defendants' Section 2 defense, and it makes any part of the 2010 change in form of government unenforceable under any theory of state law.  In short, the amended complaint and this action should be dismissed with prejudice.

B.   Procedural History.

Since 1988 the City of Decatur has had a mayor-council form of government with council members elected from five single-member districts.  This method of election was adopted as a part of the settlement of a Voting Rights Act action in the case of *Dillard v. City of Decatur*, CA No. 87-T-1197-N (M.D. Ala., Nov. 13, 1987). (Doc. 1-2).

This action began on February 27, 2014 when plaintiff Gary Voketz filed a complaint in the Circuit Court for Morgan County, Alabama.  (Doc. 1-1).   The

matters alleged in the complaint arose from an election held in April of 2010 in which a majority of those voting approved changing to a council-manager form of government for the City of Decatur, Alabama.  Under the Alabama Council Manager Act of 1982, a council-manager form of government has two council members elected at large (one of whom is to serve as Mayor and presiding officer of the council), and three council members elected from single-member districts.  *Ala Code* § 11-43A-8. The complaint sought an order from the Circuit Court of Morgan County "declar[ing] § 11-43A-6 of the Council Manager Act of 1982 mandatory and . . . immediate implementation of the Act's provisions for the City of Decatur."[1]  Plaintiff's complaint also alleged a *quo warranto* claim against the City of Decatur defendants alleging that they were unlawfully exercising their public offices and asking the Court to "enter a judgment excluding defendants from the public offices they hold until such time as they adopt and implement the council-manager form of government in the City of Decatur."  The City of Decatur refused to implement the council-manager form of government because the statutorily mandated change in form of government would have had a retrogressive impact on black voters of Decatur and would be in

---

[1] Plaintiff contended in his complaint that the Supreme Court's decision in *Shelby County v. Holder*, 133 S.Ct. 2612 (2013), removed any requirement for preclearance under Section 5 of the Voting Rights Act of the change in form of government and the method of election required under the Council-Manager Act of 1982. (Doc. 1-1, pp. 2, 5).

violation of Sections 2 and 5 of the Voting Rights Act, 52 U.S.C. §§ 10301 and 10304.[2]

Voketz' lawsuit was removed to this Court on March 25, 2014.  (Doc. 1).  A motion to remand was denied by this Court on August 19, 2014.  (Doc. 24).  After the motion to remand was denied, upon stipulation of the parties the Court dismissed the plaintiff's *quo warranto* claim with prejudice.  (Doc. 30.)  After the dismissal of plaintiff's *quo warranto* claim, plaintiff filed an amended complaint.  (Doc. 31.)

The amended complaint acknowledges the City's position that it is precluded from implementing the Council-Manager Act of 1982 because to do so would violate the Voting Rights Act.  "The Defendants contend that the method of election and/or other portions of the [Council Manager Act of 1982] cannot be implemented under the [Voting Rights Act]."   (Doc. 31. at 14).  The amended complaint states that plaintiff "brings this action to redress the Defendants' refusal to honor the results of a referendum conducted pursuant to the Council-Manager Act of 1982 or to allow those results to be honored."  Id. at 1-2.  Plaintiff contends that he is entitled to a declaratory judgment as to whether the City of Decatur defendants "are precluded from implementing the [Council-Manager form of government authorized under the

---

[2]  42 U.S.C. §§ 1973, 1973b and 1973c have been reclassified as 52 U.S.C. §§ 10301, 10303 and 10304, respectively. See http://uscode.house.gov/editorialreclassification/t52/index.html. The new classifications became effective September 1, 2014 and are used herein.

Council-Manager Act of 1982] due to the method of election it imposes on . . . the City of Decatur . . . and/or other defective portions of the [Council-Manager Act]." Id. at 14.[3]

Plaintiff thus contends in this action that the City is either required to implement the form of government and method of election required under the Council-Manager Act of 1982 or, in the alternative, based upon a variety of bizarre state law theories, that the form of government required under the Council-Manager Act may be imposed upon the City of Decatur with a different election scheme for City Council members than that mandated by the Act.[4]   The City of Decatur defendants seek summary judgment in their favor on the basis that implementation of both the form of government and the method of election required under the Council-Manager Act of 1982 would violate Section 5 of the Voting Rights Act. Specifically, the change in the form of government from mayor-council to city manager-council and any change in the method of electing council members would

─────────────────

[3]   See also id. at 15-16. (noting that defendants "contend that they are precluded from implementing the method of election . . . under the [Council-Manager Act], and therefore every provision of the [Council-Manager Act] by the Voting Rights Act.")  Plaintiff alleges that because the City of Decatur defendants "claim . . . that the method of election imposed on the City by the [Council-Manager Act] is invalid . . . plaintiff requires a declaration of his rights, status, or other legal relations."  Id. at 16.

[4]   Under the Council-Manager Act, one of the two at-large councilmen is to serve as mayor. Ala. Code § 11-43A-8.  Plaintiff makes no provision in his proposed alternative election schemes for the office of mayor.

violate Section 5 of the Voting Rights Act of 1965 as amended, 52 U.S.C. § 10304, and those changes have not been made presently enforceable by the Supreme Court's June 25, 2013, decision in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013).  The Supreme Court's holding in *Shelby County* is prospective only in its application.

      C.    <u>Undisputed Material Facts Relevant To the Section 5 Defense</u>[5].

    1.    Prior to 1988, the City of Decatur had a mayor-council form of government under which all five council members were elected by the City's voters at large.  Marks Declaration at ¶ 2 (Doc. 6-1, p. 2).  See also attachment to Stacy Gilley Declaration. (Doc. 6-5, pp. 5-8).

    2.    Currently the City of Decatur has a mayor-council form of government with five single-member council districts that was implemented in 1988 pursuant to a consent decree entered in *Dillard v. City of Decatur*, CA No. 87-T-1197-N (M.D. Ala., Nov. 13, 1987).  Marks Declaration at ¶ 3 and Exhibits 1, 2 and 3 thereto. (Doc. 6-1, pp. 3, 9-18).

    3.    Under the current mayor-council form of government, one of the five council members is elected from District 1, which has a black voter majority.  Marks

---

[5] Each of the evidentiary citations referred to herein is contained in the evidentiary submission and supporting documentary materials submitted by the City of Decatur defendants in support of their initial motion for summary judgment in this action.  (See Doc. 6 and exhibits thereto.)

Declaration at ¶ 3 (Doc. 6-1, p. 3); Declaration of William S. Cooper  at ¶ 21 (Doc. 6-2, pp. 10-11).

4.      The *Dillard* consent decree required the City of Decatur to adopt an ordinance implementing the five single-member council district form of city government pursuant to Ala. Act No. 87-191, Ala. Code § 11-43-63, and provided that the court-ordered plan would remain in effect only until such ordinance was adopted.  Marks Declaration at ¶ 4 and Exhibit 1 thereto. (Doc. 6-1, pp. 3, 9-11).

5.      Accordingly, when the five single-member Council districts were redrawn by ordinance in 2004 and were precleared under § 5 of the Voting Rights Act, the *Dillard* action was dismissed.  Marks Declaration at ¶ 4 and Exhibits 2 and 3 thereto. (Doc. 6-1, pp. 3, 12-18).

6.      In 2010 a majority of those voting approved a change from the mayor-council form of government and method of election approved in the *Dillard* litigation to a council-manager form of government pursuant to Ala. Code § 11-43A-1, *et seq*. Marks Declaration at ¶ 5 (Doc. 6-1, pp. 3-4); Declaration of Steven P. Cole  at ¶ 18 (Doc. 6-3, pp. 12-13).

7.      State law requires that the city council in such a council-manager form of government be composed of two council members elected at large, one of whom serves as mayor and presiding officer, and three council members elected from single-

-7-

member districts.  Ala. Code § 11-43A-8.  State law further mandates that each of the single-member districts "contain[] as nearly an equal number of people as possible." Ala. Code § 11-43A-9. Marks Declaration at ¶ 5. (Doc. 6-1, pp. 3-4).

8.      The City Council adopted a three-district plan that attempted to satisfy state and federal law, but it did not contain a Council district with a black voting-age majority.  Marks Declaration at ¶ 6 (Doc. 6-1, p. 4); Cooper Declaration at ¶ 24 (Doc. 6-2, p. 12).

9.      The council district adopted by the City Council in connection with the three-district plan which had the largest number of black voting-age citizens had only a 35.14% black voting age population. Cooper Declaration at ¶ 24. (Doc. 6-2, p. 12).

10.     A 3-2 city council district plan (three single-member districts and two at-large seats) required by the 1982 Council-Manger Act cannot be drawn to contain a black voting-age majority district.  Cooper Declaration at ¶ 26, 27, 28.  (Doc. 6-2, pp. 12-14).

11.     When the change to a council-manager form of government, the three-district plan, and related changes were submitted to the U.S. Department of Justice for preclearance under § 5 of the Voting Rights Act, the Chief of the Voting Section on December 19, 2011, sent the Mayor of the City of Decatur a request for additional

information.   See Exhibit A to the complaint and Exhibit 4 to Marks Declaration. (Doc. 6-1, pp. 19-22).

12.    In his letter of December 19, 2011 to the Mayor of the City of Decatur requesting additional information, the Chief of the Voting Section of the Department of Justice stated: "Our analysis indicates that the information sent is insufficient to enable us to determine that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color or membership in a language minority group, as required under Section 5." Id.

13.    Because it concluded that the additional information requested by DOJ likely would have shown that some or all of the proposed changes to the council-manager form of government would have violated the Voting Rights Act, the Decatur City Council withdrew its request for § 5 preclearance.  Marks Declaration at ¶ 8 and Exhibit 5 thereto.  (Doc. 6-1, pp. 4-6, 23-26).

14.    In connection with the withdrawal of the request for preclearance, the Decatur City Council passed Resolution No. 12-019 on January 23, 2012.  Marks Declaration at ¶ 8 and Exhibit 5 thereto.  (Doc. 6-1, pp. 4-6, 23-26).

15.    Resolution No. 12-019 provided, in pertinent part, as follows:

WHEREAS, the City Council, Mayor and City Staff with the assistance of the general public diligently sought to formulate a City of Decatur Voting District Plan under the provisions of the Council

-9-

Manager Act of 1982 (State Law) which would meet the requirements of Federal Law;

WHEREAS, in October 2011 the City submitted to the U.S. Attorney General pursuant to Section 5 of the Voting Rights Act of 1965 a proposed change of government from Mayor-Council to the Council-Manager form of government; the change in the method of election from five single-member districts to three single member districts and two seats on the Council being voted on at large, and the resulting redistricting plan; as all required by the provisions of the Council Manager Act of 1982 (State Law);

WHEREAS, in December 2011 [ ] the Voting Section of the Civil Rights Division of the Department of Justice who is responsible to review Section 5 submittals informed the City that it was unable based on the information provided to pre-clear the City's submittal for the change in form of government and related items;

WHEREAS, municipalities in the State of Alabama have only the authority granted by State Law to form a particular form of government and the City finds and determines that under the provisions of the Council Manager Act of 1982 (State Law) it is required to divide the city into three voting districts each containing as nearly an equal number of people as possible;

WHEREAS, it is mathematically impossible for the City to have three single-member voting districts with each district containing as nearly an equal number of people as possible that will not have a retrogressive impact on the Black voters of Decatur;

WHEREAS, the Council finds and determines that there is no additional information relating to the present Plan submitted or an alternative three single-member voting district plan authorized by the Council Manager Act of 1982 (State Law) which can be submitted to the U.S. Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, that will enable the Justice Department to pre-clear such Plan;

*   *   *

-10-

THEREFORE, BE IT RESOLVED by the City Council of the City of Decatur Alabama that the Mayor on behalf of the City is requested and authorized to notify the Voting Section of the Civil Rights Division of the Department of Justice that the City acknowledges its determination of December 2011; and accordingly withdraws the City's request for approval of the submitted three single-member voting district and two seats on the Council being voted on at large Plan because the city has no additional information to provide which will justify pre-clearance of the submitted Plan;

Exhibit 5 to Marks Declaration. (Doc. 6-1, pp. 23-26).

16.     In addition to withdrawing its request for preclearance for the manager-council form of government and the method of election of that form of government, the City of Decatur submitted and obtained Section 5 preclearance of the current five single-member Council districts, redrawn with 2010 census data.  Marks Declaration at ¶ 9 and Exhibit 6 thereto.  (Doc. 6-1, pp. 6, 27-28).

17.     The regularly scheduled 2012 Mayor and Council elections were held under the precleared five single-member district plan and the current Decatur Mayor and City Council members were elected and hold office under that plan.  Marks Declaration at ¶ 10. (Doc. 6-1, p. 6).

18.     The Decatur City School Board Districts from which the board members are elected must be geographically identical to the districts from which the council members of the City of Decatur are elected.  Section 2 of Ala. Act No. 95-363.

D.    *Shelby County v. Holder* Does Not Make Enforceable the Change In Form of Government and Method of Electing Council Members That Failed To Receive Section 5 Preclearance Before the 2012 Decatur Elections.

The new rule of law announced in *Shelby County v. Holder* operates prospectively, applying only to the parties before it and to litigation seeking to enforce Section 5 of the Voting Rights Act that was pending when the Supreme Court handed down its decision on June 25, 2013.  The *Shelby County* holding does not apply retroactively to invalidate precleared voting changes or to make enforceable voting changes in the past that were not implemented to comply with Section 5 and were no longer the subject of ongoing trial or appellate proceedings.  *Shelby County* did not strike down Section 5; it held only that the Section 4(b) coverage formula is "no longer" valid.  133 S.Ct. at 2631.

**1.    The New Rule of *Shelby County v. Holder* Applies Prospectively**.

The extent to which *Shelby County* applies prospectively or retroactively is governed by the principles set out in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), and this Court is bound by the Eleventh Circuit's interpretation of *Harper* in *Glazner v. Glazner*, 347 F.3d 1212 (11th Cir. 2003) (*en banc*).  *Glazner* held that *Harper* had not completely overruled the balancing test in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), for determining whether to apply a Supreme Court decision prospectively or retroactively.  The *en banc* Eleventh Circuit held that in *Harper* "the

-12-

Court has clearly retained the possibility of pure prospectivity and, we believe, has also retained the *Chevron Oil* test, albeit in a modified form, as the governing analysis for such determinations in civil cases."  347 F.3d at 1216-17 (citing *Harper*, 509 U.S. at 94-99, and *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971)).  *Glazner* distinguished in the relevant Supreme Court precedents between "pure prospectivity, which occurs where a court gives a newly announced rule no retroactive effect, and modified prospectivity, which occurs where a court applies a newly announced rule retroactively on a case by case basis."  347 F.3d at 1217 (citations omitted).  The Supreme Court has rejected both pure prospectivity and modified prospectivity "for newly announced rules governing criminal prosecutions . . . ." Id.  But, *Glazner* says, *Harper* and *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), rejected *only* modified prospectivity in civil cases, "they did not alter the underlying validity of pure prospectivity or the *Chevron Oil* test." 347 F.3d at 1217-18.  Rather, as stated by the Court in *Glazner*:  "The main principle for which *Harper* and *Beam* stand is that once a court applies a newly announced rule to the parties before it, all other courts must apply that rule to all pending cases." Id. at 1217-18.  See also *Harper*, 507 U.S. at 97. ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events,

regardless of whether such events predate or postdate our announcement of the rule.)).

It is clear that *Shelby County* contains no language which indicates that the Supreme Court intended for its holding that the coverage formula in Section 4(b) of the Voting Rights Act "can no longer be used as a basis for subjecting jurisdictions to preclearance," 133 S.Ct. at 2631, was to be applied retroactively in cases other than, as required by *Harper* and *Beam*, those cases pending at the time of the decision on June 25, 2013.  Instead, the contrary is true.  A careful reading of Chief Justice Roberts' *Shelby County* majority opinion shows on its face that the new Section 4(b) rule was not intended to be applied retroactively, and that interpretation is confirmed by the *Chevron* test.

Chief Justice Roberts' opinion acknowledges that "the Attorney General has recently objected to voting changes proposed from within the county."  133 S.Ct. at 2621 (citing Joint Appendix, 2012 WL 6952117, at pp. 87-92).  This was a reference to the objection to annexations and a 2008 redistricting plan submitted to the Attorney General by the City of Calera.  The Section 5 proceedings with respect to Calera's voting changes had been completed and were no longer pending on June 25, 2013.  Nowhere does the majority opinion say or even suggest that the Attorney General's previous objection is invalid retroactively and that Calera is now free to enforce those

-14-

voting changes that previously were unenforceable under Section 5 of the Voting Rights Act.

To the contrary, the opinion throughout speaks to the question whether the Section 4(b) coverage formula should be declared unconstitutional[6] "now," that is, "[n]early 50 years" after the Court held in 1966 that it was constitutional. 133 S.Ct. at 2624-25 (citing *South Carolina v. Katzenbach*, 383 U.S. 301 (1966)). "The question is whether the Act's extraordinary measures, including its disparate treatment of the States, ***continue*** to satisfy constitutional requirements." 133 S.Ct. at 2619 (bold emphasis added). The majority opinion acknowledges that all of Congress' previous extensions of the Section 4(b) coverage formula were upheld against constitutional challenge. 133 S.Ct. at 2620-21. It talks in terms of Section 4(b)'s "continued constitutionality" in 2009 when *Northwest Austin* "expressed serious doubts." Id. at 2621, 2627. It questions whether the coverage formula imposes "current burdens" that can be justified by "current needs." Id. at 2627. It says "today" the nation is no longer divided along racial lines. Id. at 2628. Finally, it says: "Congress could have updated the coverage formula [after 2009], but did not

---

[6]  The Court did not hold that Congress had exceeded its enforcement powers under § 2 of the Fifteenth Amendment, nor that Section 4(b) of the Voting Rights Act violates any express provision of the Constitution. Rather, it held that Section 4(b) violates "our historic tradition that all the States enjoy equal sovereignty." 133 S.Ct. at 2621 (quoting *Northwest Austin Municipal Util. Dist. No. One v. Holder*, 557 U.S. 193, 202 (2009)).

do so. Its failure to act leaves us ***today*** with no choice but to declare § 4(b) unconstitutional. The formula in that section can ***no longer*** be used as a basis for subjecting jurisdictions to preclearance." Id. at 2631 (bold emphases added).  The majority's repeated reliance on the present and the future leaves no room for any suggestion that Shelby County's past voting changes that could not be enforced under Section 5 of the Voting Rights Act now may be implemented.  In short, *Shelby County v. Holder* does not hold that the Section 4(b) coverage formula was unconstitutional before June 25, 2013.

Application of the three-part *Chevron* test yields the same conclusion that the *Shelby County* decision is to be applied prospectively.  The first *Chevron* prong is clearly satisfied.  There is no doubt that by striking down Section 4(b) the Court announced a new rule of constitutional law, overruling past precedents cited in the majority opinion and "deciding an issue of first impression the resolution of which was not clearly foreshadowed."  *Glazner*, 347 F.3d at 1220 (citation omitted).

*Glazner* noted that the *Harper* and *Beam* decisions of the Supreme Court modified the three prong *Chevron* test for determining pure prospectivity.  *Glazner*, 347 F.3d at 1219.  The modifications are to the second and third *Chevron* prongs and require that those prongs now be analyzed under an objective standard, rather than "relying on the equities of the particular case." Id. at 1219.  As the Court in *Glazner*

-16-

stated: "[W]e recognize that the second and third prongs of *Chevron Oil* are properly viewed today as objective inquiries that examine the impact of a newly announced rule on the entire class of persons potentially affected by the new rule, rather than the impact on any specific litigant." Id.

The modification to an objective standard under the second and third *Chevron* prongs operates to make both of those prongs weigh heavily in favor of prospective application of *Shelby County*, particularly given the nature of the Voting Rights Act and the interests it is intended to vindicate.  Under the second *Chevron* prong, retroactive operation of the *Shelby County* decision would retard operation of the Voting Rights Act, because it would allow previously covered jurisdictions to implement past changes in their voting practices that would have had the purpose or effect of diminishing the ability of protected minorities to elect candidates of their choice.  Retroactive operation of *Shelby County* would undermine the fundamental purpose of Section 5 of the Voting Rights Act and the Fifteenth Amendment.  "The Act has proved immensely successful at redressing racial discrimination and integrating the voting process." 133 S.Ct. at 2626.  Retroactive application of *Shelby County* would undo that success.

With regard to the third *Chevron* prong, retroactively releasing Alabama and other covered jurisdictions from their obligation to comply with Section 5 of the

-17-

Voting Rights Act would operate as an across-the-board inequitable harm to numerous members of racial and language minority groups who have relied on its preclearance requirement to protect their equal voting rights. *Glazner*, 347 F.3d at 1220. If Alabama or its political subdivisions began implementing prior changes that were unenforceable under Section 5 before *Shelby County* was decided, it would force African Americans to undertake the legally more difficult, expensive, and time-consuming burden of prosecuting new civil actions under Section 2 of the Voting Rights Act or under the Constitution to challenge previously enacted racially based impediments to voting that were clearly illegal at the time they were enacted. Such litigation, Congress concluded, was "inadequate in the covered jurisdictions to protect the rights of minority voters." 133 S.Ct. at 2622.

## 2. *Shelby County* **Does Not Apply Retroactively To Decatur's Change In Form of Government and Method of Election.**

The City of Decatur cannot lawfully implement today the 2010 changes to its form of government and method of election that were unenforceable under Section 5 of the Voting Rights Act prior to the Supreme Court's *Shelby County v. Holder* decision. As a consequence, the plaintiff cannot obtain from any court the relief sought by him in his complaint in this case.

Section 5 of the Voting Rights Act prohibits a covered jurisdiction from "enact[ing] or seek[ing] to administer any . . . standard, practice, or procedure with

-18-

respect to voting" without first obtaining preclearance either from the District Court for the District of Columbia or from the Attorney General of the United States. 52 U.S.C. § 10301. After it received a request for more information from the Chief of the Voting Section of the Department of Justice,[7] the City of Decatur in January 2012 withdrew its submission to the Department of Justice of the change to a council-manager form of government and the statutorily mandated method of election because it concluded the change would have violated Section 5 of the Voting Rights Act. Marks Declaration at ¶ 8 and Exhibit 5 thereto. (Doc. 6-1, pp. 4-6, 23-26.) Decatur then received DOJ preclearance for its redrawn five single-member districts under the existing mayor-council form of government.

The change in method of electing members of the city council is not the only part of the Council-Manager Act of 1982 that affects voting. A change in the chief executive officer of a municipality from an elected mayor to an appointed city manager also is one of the changes affecting voting that was required to be precleared under Section 5. E.g., *Presley v. Etowah County*, 502 U.S. 491, 503 (1992) (citations

---

[7] The more information request (MIR) has been a common tool "that the Attorney General sometimes uses . . . to 'send signals to a submitting jurisdiction about the assessment of their proposed voting change' and to 'promot[e] compliance by covered jurisdictions.'" *Shelby County v. Holder*, 679 F.3d 848, 866 (D.C. Cir. 2012), rev'd on other grounds, 133 S.Ct. 2612 (2013). The defendant city officials understood there was no additional information that could have demonstrated that reducing the number of single-member districts to three would not have diminished black voting strength. Declaration of Herman H. Marks at ¶ 8 and Exhibit 5 thereto. (Doc. 6-1, pp. 4-6, 23-26.) They acted responsibly by withdrawing the submission, acknowledging the City's duty to comply with Section 5 of the Voting Rights Act. Id.

omitted); *Allen v. State Bd. of Elections*, 393 U.S. 544, 569-70 (1969);  accord, *Riley v. Kennedy*, 553 U.S. 406, 420-21 (2008).  Neither this Court nor any other court other than the U.S. District Court for the District of Columbia has authority to decide the merits of whether the change from an elected mayor as chief executive to an appointed manager would have violated Section 5.  E.g., *Lopez v. Monterey County*, 519 U.S. 9, 23-24 (1996) (citations omitted); *N.A.A.C.P. v. Hampton County Election Com'n*, 470 U.S. 166, 181 (1985).  Without Section 5 preclearance, the change to a council-manager form of government could not lawfully be enforced.  52 U.S.C. § 10304.

The voting changes at issue in this action were "enacted" by petition and referendum in April of 2010.  The City of Decatur government did not "seek to administer" the change at the time required by Alabama law in the 2012 election because it had not obtained the requisite declaratory judgment from the District of Columbia District Court and had withdrawn its submission to the Attorney General, conceding that the change would violate Section 5.  This withdrawal of the manager-council submission to comply with Section 5 had the same prohibitory effect as would have had a formal objection to preclearance; as a matter of federal law, the council-manager form of government and method of election were unenforceable.

-20-

Neither the change to a city manager nor the change in method of electing council members was precleared before the statutorily required date for the change in form of government to take place, namely, "the first Monday in October following the date of the next ensuing municipal election for the election of members of the governing body." Ala. Code § 11-43A-7.  The 2012 Decatur city elections were held under the mayor-council form of government and method of election precleared by the Department of Justice.  As a consequence, neither change approved in the 2010 referendum  may be enforced today.

Reported cases addressing the prospectivity or retroactivity of *Shelby County v. Holder* comport with *Glazner's* interpretation of *Harper* and *Beam* that "[t]he main principle for which *Harper* and *Beam* stand is that once a court applies a newly announced rule to the parties before it, all other courts must apply that rule to all pending cases."  347 F. 2d at 1217-18.  Actions to enforce Section 5 still pending at the trial or appellate level on June 25, 2013, were dismissed or rendered moot.  Two days after *Shelby County* was decided the Supreme Court vacated and remanded for further consideration in light of *Shelby County* the D.C. district court's Section 5 objection to congressional and legislative redistricting plans in Texas.  *Texas v. United States*, 133 S.Ct. 2885 (2013).  See *Texas v. United States*, __ F.Supp. __, 2014 WL 2758597 (D. D.C., June 18, 2014); *Davis v. Perry*, 991 F.Supp.2d 809, 822

(W.D. Tex. 2014) (three judge court); *Perez v. Texas*, 970 F.Supp.2d 593, 598 (W.D. Tex. 2013) (three judge court).  Pending actions seeking enforcement of Section 5 were dismissed in *Ford v. Strange*, __ Fed.Appx. __, 2014 WL 4336952 at *2 (11th Cir., Sept. 3, 2014); and *King v. Lumpkin*, 545 Fed.Appx. 799, 803 n.2 (11th Cir. 2013); and were rendered moot in *Hall v. Louisiana*, 973 F.Supp.2d 675, 681-84 (2013); and *Bird v. Sumter County Bd. of Education*, __ F.Supp.2d __, 2013 WL 5797653 *2-*3 (M.D. Ga., Oct. 28, 2013).

On the other hand, where legislative redistricting plans had already received preclearance, and the preclearance issue was not pending in any trial or appellate court, two three-judge district courts held that *Shelby County v. Holder* did not operate retroactively to invalidate the states' reliance on compliance with Section 5. *Harris v. Arizona Independent Redistricting Com'n*, 993 F.Supp.2d 1042, 1075-76 (D. Ariz. 2014) (three judge court); *Alabama Legislative Black Caucus v. Alabama*, 989 F.Supp.2d 1227, 1307-08 (M.D. Ala. 2013) (three judge court).

The court's discussion of the *Shelby County* prospective/retrospective issue in *Harris* is particularly instructive.  There the three judge court considered a challenge to a map drawn for state legislative districts that was precleared and implemented in 2012 elections, based on the 2010 census.  At issue in *Harris* was whether certain population deviations in the legislative districts, which were made pre-*Shelby County*

-22-

for the purpose of complying with Section 5, could be enforced post-*Shelby County*.

*Shelby County* was decided after the trial in *Harris* but before the three judge panel

in that case rendered its decision.  The plaintiffs in *Harris* "argue[d] that [*Shelby*

*County*] applies retroactively . . . such that the Commission was not required to

obtain preclearance for the legislative map at issue, thereby nullifying the pursuit of

preclearance as a justification for population deviation."  993 F. Supp. 2d at 1075.

The majority in *Harris* disagreed.  The court held that the plaintiffs' "approach reads

too much into *Shelby County*."  Id.  It noted that the Supreme Court in *Shelby County*

did not hold that Section 5 was unconstitutional, only that the coverage formula was

invalid.  Id at 1076.  The issue in *Harris* was whether the Commission's actions were

motivated by their compliance with what they believed would be required for

preclearance under Section 5 at the time.

The court in *Harris* held that: "In redistricting, we should expect states to

comply with federal voting rights law as it stands at the time rather than attempt to

predict future legal developments and selectively comply with voting rights law in

accordance with their predictions."  993 F.Supp.2d at 1076.  The same applies in this

case.  The City of Decatur withdrew the change in form of government devised for

the Council-Manager Act of 1982 from submission to the Justice Department because

it concluded there was no basis upon which it could be precleared under Section 5.

Instead, the existing five single-member districts were submitted to the Justice Department and subsequently precleared. *Shelby County* cannot be applied retroactively to resurrect a form of government and method of election that were unenforceable under Section 5 prior to June 25, 2013.

E.   <u>Conclusion.</u>

Defendants are entitled to summary judgment in their favor as a matter of law. A change to the council-manger form of government and method of electing the Decatur City Council would violate Section 5 of the Voting Rights Act. *Shelby County v. Holder*, 133 S.Ct. 2612 (2013), does not make the results of the 2010 referendum enforceable today because the new rule of law announced in *Shelby County* operates only prospectively.  The plaintiff's amended complaint is due to be dismissed with prejudice.

s/ George W. Royer, Jr.                   <br>George W. Royer, Jr.              

**LANIER FORD SHAVER & PAYNE P.C.**
2101 West Clinton Avenue, Suite 102 (35805)
Post Office Box 2087
Huntsville, Alabama 35804
Phone: 256-535-1100 / Fax: 256-533-9322
gwr@lfsp.com

s/ James U. Blacksher
James U. Blacksher

Post Office Box 636
Birmingham, Alabama 35201
Phone: 205-591-7238 / Fax: 866-845-4395
jblacksher@ns.sympatico.ca

Attorneys for Defendants City of Decatur, Alabama,
City Council of Decatur, Don Kyle, Roger Anders,
Billy Jackson, Gary Hammon, Charles Kirby, and
Chuck Ard

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Carl A. Cole, III
Russ Prickett
**THE COLE LAW FIRM**
Post Office Box 2064
Decatur, Alabama 35602
Carl@CarlColeLaw.com

Edward Still
429 Green Springs Hwy, Ste. 161-304
Birmingham AL 35209
still@votelaw.com

on this the 2nd day of October, 2014.

s/ George W. Royer, Jr.
George W. Royer, Jr.

-25-