FILED

2015 Sep-10  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**GARY VOKETZ**, *for himself and*     )
*on behalf of the citizen of Alabama,*  )
*and the State of Alabama*,            )
                                        )
    Plaintiff,      )            Civil Action Number
                                        )            **5:14-cv-00540-AKK**
**v.**                                  )
                                        )
**CITY OF DECATUR,**                    )
**ALABAMA**, et al.,                    )
                                        )
    Defendants.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Gary Voketz brings this lawsuit against the City of Decatur,

Alabama and the members of its city council. Doc. 31. In a nutshell, Voketz seeks

declaratory and injunctive relief from the court requiring the defendants to

implement a council-manager form of government, which Decatur's residents

approved in an April 2010 referendum.  *Id*. at 17–19; *id*. at 4. The defendants

move for summary judgment.[1] Doc. 34. Their sole contention is that the Supreme

Court's June 2013 decision in *Shelby County v. Holder* does not apply

---

[1] A number of African-American residents who live in Decatur's current African-American-majority city council district have intervened as defendants, *see* docs. 20, 26, and they join the City and councilmen's motion, doc. 38.

retroactively to the facts giving rise to this case, which occurred between 2010 and 2012, and therefore because the council-manager form of government did not receive preclearance prior to its statutory implementation date, as was required at the time by § 5 of the Voting Rights Act, the referendum is now a "dead letter." Doc. 35 at 3.

As a relevant side note, the Voting Rights Act of 1965 was enacted "to address entrenched racial discrimination in voting, 'an insidious and pervasive evil which had been perpetuated in certain parts of our country through unremitting and ingenious defiance of the Constitution.'" *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612, 2619 (2013) (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966)). "The Act has proved immensely successful at redressing racial discrimination and integrating the voting process." *Id*. at 2626. Some of its provisions, namely, § 2, which prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen . . . to vote on account of race or color," apply nationwide.[2] 52 U.S.C. § 10301. Others apply only to certain parts of the country. Section 4(b) contains the "coverage formula," which defines "covered jurisdictions" as those with a recent history of racially

---

[2] *Shelby County* did not address § 2. *See Shelby County*, 133 S. Ct. at 2619 ("Section 2 is permanent, applies nationwide, and is not at issue in this case.").

discriminatory voting practices and low voter turnout and registration. § 10303(b). In those covered jurisdictions, prior to *Shelby County*, authorities could not enact changes in voting procedures without first receiving approval, or "preclearance," from federal officials. § 10304(a).

In *Shelby County*, the Court held that because § 4(b)'s "[c]overage today is based on decades-old data and eradicated practices," *Shelby Cty.*, 133 S. Ct. at 2627, it is unconstitutional in light of "current conditions," *id.* at 2629. Although the *Shelby County* majority's opinion did not directly reach § 5, in the absence of the Congressional implementation of a new coverage formula, it has effectively eviscerated that section as well. *See id.* at 2632 n. 1 (Ginsburg, J., dissenting) (noting that "without [§ 4(b)], § 5 is immobilized"). In that respect, the court agrees with the defendants that "[r]etroactive application of *Shelby County* would undo [the] success" of the Voting Rights Act." Doc. 35 at 19.

Nonetheless, as it relates to this case, the defendants' motion fails because their position that the Supreme Court intended *Shelby County* to apply only prospectively is contrary to well-established precedent. Moreover, the defendants have failed to present the court with any authority supporting their contention that they are no longer obligated to implement the results of the 2010 referendum. Consequently, the defendants' motion is **DENIED**.

In reaching this decision, the court recognizes that it is kicking the can down the road regarding what is really at issue here: whether the council-manager form of government Decatur's citizens approved of in 2010 would impermissibly dilute the voting power of its African-American citizens. That question, however, is properly addressed pursuant to § 2, and consequently not presently before the court. As the defendants correctly note it "is an issue for another day." Doc. 45 at 10. The parties therefore should not read this opinion to have any bearing on the viability of a § 2 defense. Nor should the parties read it as a tacit approval of the plaintiff's rather labyrinthine theory of recovery. *See* doc. 31 at 17–19. Instead, the takeaway of this opinion for the parties and the citizens of Decatur is that the defendants may not rely on a law that the Supreme Court has rejected as a basis for failing to implement the results of the 2010 referendum.

## I. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986) (alteration in original). The moving party bears the initial burden of

proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then

shifts to the nonmoving party, who is required to "go beyond the pleadings" to

establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal

quotation marks omitted). A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising

from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress

& Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all

justifiable inferences must be drawn in the non-moving party's favor). Any factual

disputes will be resolved in the non-moving party's favor when sufficient

competent evidence supports that party's version of the disputed facts. *See Pace v.

Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required

to resolve disputes in the non-moving party's favor when that party's version of

events is supported by insufficient evidence). However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary

judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per

curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to the resolution of the defendants' motion are not in dispute and do not differ materially from those spelled out in the court's order denying the plaintiff's motion to remand, doc. 24, which the court largely incorporates here. Currently, Decatur, Alabama has a mayor-council form of government, which the city implemented in 1988 pursuant to a consent decree entered in *Dillard v. City of Decatur*, CA No. 87-T-1197-N (M.D. Ala. Nov. 13, 1987). Doc. 13 at 3. The mayor is elected in an at-large election, doc. 13-3 at 16, and the five city council members are elected by each of Decatur's five, single-member council districts. Doc. 13 at 3. One of those districts, District One, has an African-American voting-age majority. *Id*.

In August 2009, Voketz began circulating a petition to Decatur's eligible voters calling for an election to change the city's mayor-council form of government to the council-manager form authorized under the City Manager Act

of 1982 ("CMA"), Ala. Code. § 11-43A-1 *et seq*. Doc. 31 at 3. After the petition

received the requisite number of signatures, a probate judge certified it as valid

and forwarded it to Decatur's mayor who, as required by statute, submitted the

question of the adoption of a council-manager form of government to Decatur's

residents in a special election. *Id*. at 3–4. In the special election, held in April

2010, Decatur residents approved the adoption of a council-manager form of

government. *Id*. at 4.

Alabama law dictates that the city councils of cities adhering to the council-

manager form of government consist of five members. Ala. Code § 11-43A-8.

Two members, including one who serves as mayor, are elected by the voters at

large. *Id*. The remaining members are elected by the voters from each of three

single-member districts. *Id*. Accordingly, in September and October of 2011, the

Decatur City Council approved a voter districting plan containing three districts

and submitted it to the United States Department of Justice ("DOJ") for

preclearance as required by Section 5. Doc. 31 at 4–5. Unlike Decatur's districting

plan under the mayor-council form of government, the three-district plan

submitted to the DOJ did not include a district with an African-American voting-

age majority. Doc. 13 at 4. The parties dispute whether it is possible to create a

three-district plan with an African-American voting-age majority. Doc. 35 at 5–6.

On December 19, 2011, the DOJ sent Decatur's mayor a letter stating that the information the city submitted regarding its proposed change to a council-manager form of government was insufficient for the Attorney General to complete a review of the submitted voting changes as required by the Voting Rights Act. Doc. 31 at 5. The letter neither approved nor denied the plan, and instead requested additional information concerning the possible change. *Id*. Following receipt of the letter, the city council withdrew the proposed council-manager plan from consideration by the DOJ and resubmitted the previously-approved mayor-council plan, which the DOJ reapproved in April 2012. *Id.* at 6.

According to Voketz, in January 2013, Decatur's mayor asked the city council to seek DOJ guidance on a council-manager districting plan and "placed the choice of resubmission of a council-manager plan with the City Council despite being informed by the City Attorney . . . that the authority for resubmission rested with the Mayor, the chief executive officer," and that, "[a]cting against the advice of the City Attorney, the City Council voted down resubmission of a council-manager plan by a three to two vote." *Id*. Voketz further contends that "[a]fter the City Council voted against resubmission of a council-manager plan to the DOJ, the [d]efendants took no additional steps to implement the [council-manager form of government] or to seek judicial ratification of their inability to

implement the form of government chosen by the voters of . . . Decatur." *Id*.

On February 27, 2014, Voketz filed this action in the Circuit Court of Morgan County, Alabama. Doc. 1-1. The defendants removed the action to this court, doc. 1, and the court denied Voketz's motion to remand, doc. 24.

## III. ANALYSIS

The issue before the court is whether *Shelby County*'s holding applies retroactively or prospectively. Doc. 35 at 6. A rule that is applied prospectively is only valid regarding events that occur and litigation that commences subsequent to its announcement. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 98 (1993); *see also Crowe v. Bolduc*, 365 F.3d 86, 94–95 (1st Cir. 2004) (explaining that the court's prospective holding would not apply to the parties presently before it). In contrast, "when [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review *and as to all events, regardless of whether such events predate or postdate our announcement of the rule*." *Harper*, 509 U.S. at 97 (emphasis added). Although it has acknowledged that "prospectivity appears to have fallen into disfavor with the Supreme Court," *Glazner v. Glazner,* 347 F.3d 1212, 1216 (11th Cir. 2003), this circuit has taken the view that *Harper* did not entirely forestall the implementation of prospective

holdings, *id*. at 1216–18.

In support of their motion for summary judgment, the defendants ultimately contend[3] that the Supreme Court intended for *Shelby County*'s holding to apply prospectively because the Court purportedly did not apply the new rule announced by the holding to the parties before it. Doc. 45 at 6–8. While it can be difficult on occasion to parse out the holding of a Supreme Court opinion, this is simply not the case here. In fact, the defendants' own language undermines their position. *See* doc. 45 at 4 ("Shelby County, Alabama, was a covered jurisdiction required to comply with Section 5 of the Voting Rights Act until June 25, 2013."). In other words, the defendants implicitly recognize that *Shelby County*'s holding that § 4(b) was unconstitutional applied to the plaintiff in that case and freed the plaintiff from its obligation to comply with § 5.[4] Put differently, because the

_____

[3] The defendants' position in their reply brief is different from the one they articulated in their brief in support of their motion, where they contend that *Shelby County* "appl[ied] only to the parties before it and to litigation seeking to enforce Section 5 of the Voting Rights Act." Doc. 35 at 14; *c.f.* doc. 45 at 4 ("[I]n *Shelby County*, the Court did not apply its holding to the parties before it."). Although "reply briefs are for replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief." *Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp. 2d 924, 929 (N.D. Ill. 2009), the court will not take issue with the procedural impropriety of the defendants' argument because it fails substantively.

[4] For an illustration of a court announcing a prospective new rule of law, which consequently did not apply to the parties before it, see the First Circuit's opinion in *Crowe v. Bolduc*, in which the court overruled prior circuit precedent and held that a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), not a motion to correct a judgment pursuant to Fed. R. Civ. P. 60(a), is the proper vehicle for the initial assessment of mandatory prejudgment interest, wholly omitted from an earlier judgment. 365 F.3d at 89. However, the court announced

Supreme Court "applie[d] a rule of federal law *to the parties before it*, that rule is

the contr olling interpretation of federal law and must be given full retroactive

effect." *Harper*, 509 U.S. at 97 (emphasis added).[5] Consequently, although the

_____

that this rule would only apply prospectively, and consequently affirmed the district court's award of prejudgment interest to the plaintiff, even though the plaintiff filed his motion for interest pursuant to and within the time frame dictated by Fed. R. Civ. P. 60(a) rather than Fed. R. Civ. P. 59(e). *Id.*

[5] Based on the court's research, only four other federal courts have addressed the question of whether *Shelby County* applies retroactively. Like this court, all four concluded that it does. *See Thompson v. Att'y Gen. of the State of Miss.*, Docket No. 3:15-cv-00620-CWR-JG-DPJ, at 8 (D. Miss. Sept. 9, 2015) (holding that Mississippi could administer a voting law that its legislature passed prior to *Shelby County* and that never received preclearance, even though preclearance was required at the time of its enactment); *Howard v. Augusta-Richmond Cty.*, Docket No. 1:14-cv-00097-JRH-BKE, at 7 (S.D. Ga. May 13, 2014) ("Under *Harper*, *Shelby County* applies retroactively . . . ."); *Bird v. Sumter Cty. Bd. of Educ.*, No 1:12-cv-76 (WLS), 2013 WL 5797653, at *3 (M.D. Ga. Oct. 28, 2013) ("Nothing in the *Shelby County* decision precludes the retroactive effect typically afforded judicial decisions"); *Hall v. Louisiana*, 973 F. Supp. 2d 675, 683–84 (M.D. La. 2013) (quoting *Harper*, 509 U.S. at 97) ("When the Supreme Court issued its opinion in *Shelby County*, it did not expressly indicate whether its decision should be applied retroactively. However, under the prevailing rules governing the application of judicial decisions, the Court's opinion 'is properly understood to have followed the normal rule of retroactive application.'"); *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1076 (D. Ariz. 2014) ("If we had before us a challenge to the coverage formula set forth in Section 4 of the Voting Rights Act, we would unquestionably be expected to apply Shelby County 'retroactively,' and we would do so. That is, however, not the issue before us."). Moreover, when the Eleventh Circuit reversed the *Howard* district court's award of attorney's fees to the prevailing defendants, which was the only issue before it on appeal, it did so because "at the time the complaint was filed, there was no binding precedent clearly establishing that . . . *Shelby County v. Holder* was retroactive," *Howard*, No. 14-15474, at 3 (11th Cir. Sept. 3, 2015) (citation omitted), and implicitly recognized that it is, *id.* (describing the *Howard* defendants' *Harper*-based retroactivity argument as "a good argument—indeed, what turned out to be a winning argument").

The defendants attempt to rely on two additional post-*Shelby* opinions to advance their position. *See* doc. 35 at 24–26 (citing *Harris*, 993 F. Supp. 2d at 1075–76; *Ala. Legislative Black Caucus v. Alabama*, 989 F. Supp. 2d 1227, 1307–08 (M.D. Ala. 2013), *rev'd* 135 S. Ct. 1257 (2015)). These cases, however, involved the constitutionality of legislative districts created pre-*Shelby County*, which state officials contended they designed to comply with § 5, rather than due to racial motivations. *See Harris*, 993 F. Supp. 2d at 1076; *Ala. Legislative Black Caucus*, 989 F.

defendants are correct that the *Shelby County* plaintiff sought prospective remedies,[6] doc. 45 at 7, whether the holding of the case applied prospectively is an entirely separate matter,[7] and one that the Court rejected when it applied the holding to the parties in *Shelby County*.

The defendants further undermine their position by describing *Shelby County*'s impact on pending § 5 enforcement actions. Again, *Harper* explains that when a new rule of law is applied retroactively, it applies to "all cases still open on direct review and to all events, regardless of whether such events predate or postdate [the] announcement of the rule."[8] 509 U.S. at 97. By the defendants' own account, "[a]ctions to enforce Section 5 still pending at the trial or appellate level

---

Supp. 2d at 1307–08 (M.D. Ala. 2013). That is not the issue presently before the court, so neither case is relevant here.

[6] The *Shelby County* plaintiff sought a declaratory judgment that §§ 4(b) and 5 were facially unconstitutional as well as a permanent injunction against their enforcement. *Shelby County*, 133 S. Ct. at 2612, 2621–22.

[7] Both parties are guilty of attempting to conflate remedy and application of a new rule. *See* doc. 44 at 10 ("This case does not implicate non-retroactivity doctrine because Voketz is seeking only prospective relief.").

[8] The defendants contend that "*Shelby County* contains no language [that] indicates that the Supreme Court intended for its holding . . . to be applied retroactively in cases other than . . . those cases pending at the time of the decision on June 25, 2013." Doc. 35 at 16. This position ignores *Harper*'s dictate that when a new rule of law is applied retroactively, it applies to "all cases still open on direct review *and to all events, regardless of whether such events predate or postdate [the] announcement of the rule.*" 509 U.S. at 97 (emphasis added). Therefore, if *Shelby County* applied to cases pending at the time the Court issued its opinion, it clearly applies to cases like this that commenced after the announcement of a new rule of law but are based on events that predated the announcement.

on June 25, 2013, were dismissed or rendered moot." Doc. 35 at 23 (citing *Ford v. Strange*, 580 F. App'x 701, 705 (11th Cir. 2014); *King v. Lumpkin*, 545 F. App'x 799, 803 n. 2 (11th Cir. 2013); *Bird v. Sumter Cty. Bd. of Educ.*, No. 1:12-cv-76 (WLS), 2013 WL 5797653 at *2–*3 (M.D. Ga. Oct. 28, 2013); *Hall v. Louisiana*, 973 F. Supp. 2d 675, 681–84 (M.D. La. 2013)). Critically, the defendants note that two days after it decided *Shelby County*, the Supreme Court vacated the judgment in *Texas v. United States* and remanded the case for further consideration in light of *Shelby County*. *Id*. (citing 133 S. Ct. 2885 (2013)). In other words, by indicating that *Shelby County* should be applied to pending cases, the Supreme Court clearly signaled that it intended the case's holding to have a retroactive effect.

Moreover, the court disagrees with the defendants' contention that the proper avenue to determining whether *Shelby County* applies prospectively or retroactively is the application of the *Chevron Oil* balancing test. *See* doc. 35 at 18–20. Per the *Chevron Oil* test, a court "must look to the following factors to determine whether to reject retroactive application of a new decision in favor of a purely prospective application": whether the decision establishes a "'new principal of law,'" whether "'retrospective operation will further or retard'" the operation of the rule in question, and whether "'inequity [will be] imposed by retroactive application.'" *Glazner*, 347 F.3d at 1216 (quoting *Chevron Oil Co. v. Huson*, 404

U.S. 97, 106–07 (1971)). However, in *Harper*,[9] the Supreme Court stated that "the legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevail over any claim based on a *Chevron Oil* analysis.'" *Harper*, 509 U.S. at 98 (quoting *James B. Bean Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991) (opinion of Souter, J.). *Chevron Oil* has no role here in light of the court's finding that the Supreme Court applied *Shelby County* retroactively because it applied the case's new rule to the parties before it and to actions pending at the time of the decision.[10]

Finally, the defendants are correct that *Shelby County* contains present and

---

[9] This circuit has not held that *Harper* overruled *Chevron Oil*. *See Glazner*, 347 F.3d at 1216–17. *But see Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 112 F.3d 652, 672 (3d Cir. 1997) (citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 751–53 (1995); *Harper*, 509 U.S. at 97)) ("[T]he Supreme Court's latest retroactivity jurisprudence has overruled *Chevron Oil's* equitable balancing test as the determinant of whether a new principle of law will be applied retroactively."); *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1317 (6th Cir. 1995) (citations omitted) ("The parties correctly note that *Chevron Oil Co. v. Huson* is no longer the governing standard for retroactivity in civil cases. In *Harper v. Virginia Department of Taxation* the Supreme Court overruled *Chevron* and adopted a strict rule requiring retroactive application of new decisions to all cases still subject to direct review.") Nonetheless, it has recognized that *Harper* limited the scope of *Chevron Oil* and signaled a clear preference for retroactivity. *Glazner*, 347 F.3d at 1216–17. Consequently, the cases the defendants contend support their contention that "[n]ew [r]ules [a]ffecting [e]lection [l]aw [a]re [o]ften [o]nly [a]pplied [p]rospectively" are of little relevance here as they predate *Harper* by at least fifteen years. *See* doc. 45 at 4–5 (citing *Buckley v. Valdeo*, 424 U.S. 1 (1976); *Georgia v. United States*, 411 U.S. 526, 541 (1973); *Fortson v. Morris*, 385 U.S. 231, 235 (1966)).

[10] The court also notes that in *Glazner*, which the defendants rely on for their position that the *Chevron Oil* balancing test remains viable in this circuit, the court used the test to determine whether its own new rule, announced in that case, should apply prospectively or retroactively. *See* 347 F.3d at 1216. It did not determine whether the holding of a Supreme Court case should be applied prospectively or retroactively.

forward looking language that can be read to support their position that the case should be applied prospectively. *See, e.g.* doc. 35 at 18 (citing *Shelby County*, 133 S. Ct. at 2631) (emphasis added) ("[Congress' failure to act leaves us *today* with no choice but to declare § 4(b) unconstitutional. The formula in that section can *no longer* be used as a basis for subjecting jurisdictions to preclearance.").[11] However, in light of the foregoing reasons cited by the court that favor a conclusion that the Supreme Court intended *Shelby County* to apply retroactively and, importantly, in the absence of a clear directive from the Court that *Shelby County*'s rule should apply prospectively, the language cited by the defendants is insufficient to bring the court around to the defendants' position. *See Harper*, 509 U.S. at 97–98 (quoting *Beam*, 501 U.S. at 539) (opinion of Souter, J.) ("When this Court does not 'reserve the question whether its holding should be applied to the parties before it,' . . . an opinion announcing a rule of federal law 'is properly understood to have followed the normal rule of retroactive application' and must be 'read to hold . . . that its rule should apply retroactively to the litigants then before the Court.'"); *see also Hall*, 973 F. Supp. 2d at 683 (citing *Harper*, 509

---

[11] This language is the basis of an opinion issued by the Attorney General of Mississippi stating that *Shelby County* is prospective in application, *see* Office of the Attorney General, States of Mississippi, Opinion No. 2013-00395, 2013 WL 5975618, at *3–*5 (Oct. 28, 2013), which is the sole authority the defendants have cited that adopts their position regarding *Shelby County*.

U.S. at 97) ("[B]ecause the Supreme Court did not state a contrary intention in *Shelby County*, the general rule that a rule of law set out by the Court must be given retroactive effect in cases that are still under direct review applies.").

In sum, because the court believes the Supreme Court's application of *Shelby County* to the parties before it and to pending cases indicates it intended for the case  to apply retroactively, *Shelby County* is not grounds for precluding Voketz's claim. As further grounds for denying the defendants' motion, the court notes that the defendants have failed to present the court with any legal basis for failing to implement the results of the 2010 referendum. The defendants' most coherent argument on this point is that "[b]ecause the change to a council-manager form of government did not receive preclearance before its statutory implementation date in 2012, the 2010 referendum now is a dead letter." Doc. 35 at 3. The CMA states that when citizens of a municipality vote to adopt a council-manager form of government, "[t]he change in the form of government shall take place on the first Monday in October following the date of the next ensuing municipal election for the election of members of the governing body." Ala. Code § 11-43A-7. However, both federal and state law foreclose the CMA's timing provision as a basis for granting the defendants' motion. The Supreme Court has repeatedly held that when a statute says officials "shall" take action by a particular

date, those officials' failure to do so will not preclude them from taking action

later when "'important public rights are at stake.'" *Barnhart v. Peabody Coal*, 537

U.S. 149, 158 (2003) (quoting *Brock v. Pierce Cty.*, 476 U.S. 253, 260 (1986)).

Instead, "if a statute does not specify a consequence for noncompliance with

statutory timing provisions," which the CMA does not, "the federal courts will not

in the ordinary course impose their own coercive sanction." *United States v. James*

*Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993). Similarly, the Alabama Supreme

Court has long held that "[w]hen a statute directs an officer to do a thing in a

certain time, without any negative words restraining him from doing it afterwards,

the naming of the time will not be construed as a limitation of his authority.'"

*Birmingham Bldg. & Loan Ass'n v. State*, 25 So. 52, 54 (Ala. 1899); *see also*

*Mobile Cty. Republican Exec. Comm. v. Mandeville*, 363 So. 2d 754, 757 (Ala.

1978) (explaining that the word "shall," when the provision in which it appears

"relates to form and manner" is merely "directory" rather than "mandatory"). As

Voketz correctly notes, subscribing to the defendants' position would allow

officials to avoid implementing a referendum with which they disagree simply by

failing to implement it by a statutorily imposed dated, which is obviously an

inequitable result. *See* doc. 44 at 13.

    The defendants' other explanation for why they failed to implement the

referendum seems to be that Decatur officials determined that it would be impossible to design a council-manager form of government that complied with the CMA without impermissibly diluting the voting power of Decatur's African-American residents, and, consequently that any proposed voting changes pursuant to the referendum would fail to receive preclearance from the Department of Justice. Accordingly, they resorted to the status quo, which received preclearance. This, they contend, absolved them of any obligation to implement the results of the referendum. Doc. 35 at 3–4. This position is problematic for two separate but overlapping reasons. First, while the court agrees with the defendants that allowing *Shelby County* to serve as the basis for implementing voting changes that the DOJ or the District Court for the D.C. Circuit refused to preclear prior to *Shelby County* poses a number of potential problems,[12] that is not the scenario currently before the court. Although the defendants repeatedly refer to their failure to implement the referendum as a "closed § 5 matter," *see, e.g.*, doc. 45 at 9–11, neither the DOJ nor the District Court for the D.C. Circuit refused to preclear any voting changes proposed by Decatur pursuant to the CMA and, before *Shelby County* effectively nullified § 5, these were the only entities authorized to

---

[12] The court notes, however, that the DOJ has indicated to the state of Alabama that it will not oppose efforts to implement voting changes made pursuant to a 1979 piece of state legislation on § 5 grounds. Doc. 44-1 at 2.

determine whether a proposed voting change in a covered jurisdiction had "the

purpose [or] the effect of denying or abridging the right to vote on account of race

or color," in violation of § 5. 52 U.S.C. § 10303. Instead, the defendants seem to

contend that by withdrawing the council-manager plan from consideration by the

DOJ, *they* closed § 5 proceedings. The defendants, however, are not arbiters of

federal election law.

This leads to the second, more general problem with the defendants'

position. Essentially, viewing the facts in a light most favorable to Voketz, the

defendants have unilaterally declined to implement the results of an election.[13]

While they may have had justifiable reasons for doing so, they have yet to present

those reasons to the court, which is a burden they will have to bear if they are to

prevail in this lawsuit.

---

[13] The defendants cite circumstances that were the subject of an opinion issued by the Arizona Attorney General as an example of a "closed [§ 5] matter." *See* doc. 45 at 9–10 (citing Office of the Attorney General, State of Arizona, No. I13-008 (R13-013), 2013 WL 5422810, at *3 (Aug. 29, 2013)). In that instance, the state of Arizona withdrew proposed legislation from preclearance consideration after the DOJ issued a request for more information. 2013 WL 5422810, at *3. The state legislature removed potentially objectionable language, the state resubmitted the legislation, and the DOJ precleared it. *Id*. The Arizona scenario, in which the state legislature, pursuant to its authority to draft and implement laws, revised a piece of objectionable legislation, is fundamentally different from the situation before the court, where the defendants failed to fulfill their statutory obligation to implement the results of an election and contend they put the matter to rest by seeking and receiving preclearance for a voting plan that, unlike the council-manager plan, did not receive the approval of the citizens of Decatur.

**IV. CONCLUSION**

For the reasons stated above, because the Supreme Court's decision in *Shelby County* applies retroactively, the defendants' motion for summary judgment based on a prospective-only application of *Shelby County* is **DENIED**.[14]

**DONE** this 10th day of September, 2015.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[14] Voketz moves to strike some of the defendants' evidentiary submissions. Doc. 43. Because the submissions Voketz objects to had no bearing on the resolution of the defendants' motion, his motion to strike is **DENIED AS MOOT**.