# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **GARY VOKETZ,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number |
| | ) **5:14-cv-00540-AKK** |
| **THE CITY OF DECATUR, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Gary Voketz brings this declaratory and injunctive relief action against the City of Decatur, Alabama and certain city council members, seeking to require the defendants to implement the council-manager form of government approved by Decatur residents in an April 2010 referendum. Doc. 31 at 4, 17–19. The defendants previously filed two separate motions for summary judgment, arguing that the court should dismiss this case because the implementation of the council-manager form of government would have impermissibly infringed on the voting rights of African-Americans in Decatur in violation of the Voting Rights Act of 1965. *See* docs. 34 & 38. In support of their motions, the defendants asserted that the Supreme Court intended for *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612 (2013), which invalidated Section 4(b) of the Voting Rights Act, to apply

prospectively. *See generally id*. The court denied both motions, holding that *Shelby County* applied retroactively and that, as a result, the defendants could not rely on Section 4(b) to support their decision to refrain from implementing the 2010 referendum. *See generally* doc. 48.

Since the court's ruling, the Supreme Court has decided *Harris v. Arizona Independent Redistricting Commission*, 136 S. Ct. 1301 (2016), in which it discussed *Shelby County's* application. According to the defendants, *Harris*, supports their contention that *Shelby County* only applies prospectively, and as a result, the defendants have filed a motion to reconsider, doc. 63. In support of their motion, the defendants argue that they are entitled to summary judgment because they acted lawfully when they relied upon the preclearance requirements in Section 5 in determining that the council-manager plan would have a retrogressive effect on minority voters. For the reasons below, with the benefit of oral argument and supplemental briefing, *see* docs. 68 & 69, the court finds that the motion to reconsider is due to be granted,[1] and that the defendants are entitled to summary judgment.

---

[1] A court may grant a motion to alter or amend based on (1) an intervening change in controlling law; (2) newly-discovered evidence; or (3) the need to correct manifest errors of law or fact. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *In re Kellogg*, 197 F.3d 1116, 1120 (11th Cir. 1999). The defendants have moved based on an "intervening change in controlling law." More specifically, the defendants contend that the Supreme Court clarified in *Harris* that the Court intended for *Shelby County*'s holding to apply prospectively, and that as a result, the court erred when it denied their motions for summary judgment. Docs. 35 at 6; 48.

To address the parties' contentions on this issue, a brief summary of *Harris* is warranted. *Harris* involved the outcome of a redistricting plan proposed and adopted by the Arizona Commission in 2010, after obtaining Department of Justice review, as part of the Commission's decennial review of Arizona's thirty legislative districts. The Commission initially created a grid-like map with district boundaries with a maximum population deviation of 4.07%.[2] 136 S. Ct. at 1306. Following the advice of a statistician, a Voting Rights Act expert, and a mapping consultant, the Commission then redrew the initial map by shifting the boundaries in three districts to ensure that the plan had 10 ability-to-elect districts. *Id.* The boundary shifts resulted in District 8, a Republican leaning district, becoming more politically competitive, and the redrawn districts ultimately having a population deviation of 8.8%. *Id.* at 1309. The opponents of the plan contended that the population variations were inconsistent with the Fourteenth Amendment and that political considerations, rather than a good faith attempt to comply with the Voting Rights Act, motivated those variations. *Id.* at 1306. The three-judge district court panel disagreed.

---

[2] The Equal Protection Clause of the Fourteenth Amendment requires States to construct legislative districts with as equal population as is practicable. *See Reynolds v. Sims,* 377 U.S. 533, 577 (1964). Due to the near impossibility of achieving mathematical perfection in districting, some population deviation is acceptable, however "the overriding objective [in drawing legislative districts] must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen." *Id.* at 578.

On appeal to the Supreme Court, based on *Shelby County*'s invalidation of Section 4(b), the opponents of the plan argued that the district court erred in finding that compliance with Section 5 was a legitimate state interest that could account for the population variation. *Id*. at 1306. In its decision upholding the district court, the Supreme Court found that, in addition to the compactness of a district, "compliance with § 5 of the Voting Rights Act is also a legitimate consideration that can justify some deviation from perfect equality of population." *Id*. Moreover, the Court found that the Commission had obtained DOJ approval of the redistricting plan, and that DOJ approval provided the Commission "legal assurance that it has satisfied the nonretrogression requirement [of the Voting Rights Act]." *Id*. at 1307. Finally, and relevant here, the Court stated that, because Arizona was subject to the Voting Rights Act at the time it created the plan,[3] *Shelby*'s subsequent invalidation of Section 4(b) did not invalidate the Commission's actions because undertaking acts to comply with the Act was, in fact, a legitimate state interest. *Id*. at 1310.

*Harris* differs from this case in one key respect: unlike Arizona, which obtained DOJ preclearance of its redistricting plan, the City of Decatur withdrew the proposed council-mayor plan and abandoned the pre-clearance process after it

---

[3] Similarly, here, Voketz does not dispute that, as a covered jurisdiction, the City of Decatur was obligated in 2010 to engage in the preclearance process. After all, *Shelby County* had not yet invalidated Section 4(b), and Section 5 explicitly references both States *and* political subdivisions with respect to the prohibition against enacting any voter qualification change without preclearance. *See, e.g.,* 52 U.S.C. § 10304.

received a request for more information (MIR). *See, e.g.,* docs. 63 at 4; 65. Indeed, this fact factored in the court's opinion denying the defendants' motion for summary judgment:

> neither the DOJ nor the District Court for the D.C. Circuit refused to preclear any voting changes proposed by Decatur pursuant to the CMA and, before *Shelby County* effectively nullified §5, these were the only entities authorized to determine whether a proposed voting change in a covered jurisdiction had "the purpose[or] the effect of denying or abridging the right to vote on account of race or color," in violation of § 5. 52 U.S.C. § 10303. Instead, the defendants seem to contend that by withdrawing the council-manager plan from consideration by the DOJ, *they* closed § 5 proceedings. The defendants, however, are not arbiters of federal election law.

Doc. 48 at 18–19. With the benefit of the motion to reconsider and further review of the defendants' arguments, the court agrees with defendants that it failed to fully appreciate their arguments regarding DOJ's use of MIRs. As the defendants pointed out then and now, the MIR asked the defendants if they had attempted to adopt the council-manager plan while maintaining the five-member districts. Doc. 6-1 at 21. The defendants took this pointed question as a signifier that DOJ would not preclear the proposed plan because it would shrink the number of districts from five to three and would adversely impact the voting power of African-Americans in Decatur.[4] *See* docs. 6-1 at 4-6, 23-26; 6-2 at 12 (evidence from the defendants'

---

[4] The Council-Manager Act requires a city to elect one mayor from a general at large election, one council member from a general at large election, and three council members from three single-member districts. *See* Ala. Code § 11-43A-8.

expert that, based on the 2010 census and population demographics, "[b]lacks in Decatur are not sufficiently numerous and geographically compact to constitute a viable and constitutional majority-Black voting age district under a 3 single-member district plan.").[5]

Indeed, it is generally accepted that DOJ used the MIR as a mechanism to deter discriminatory proposals. For example, in a 2006 Congressional report that discussed the mechanisms DOJ used to obtain compliance with Section 5, Congress found that the

> use of MIRs force covered jurisdictions to take action when seeking to preclear voting changes that may be discriminatory . . . [and] testimony presented . . . revealed that MIRs affected more than 800 additional voting changes that were submitted for preclearance, compelling covered jurisdictions to either alter the proposal or withdraw it from consideration altogether.

H.R. Rep. No. 109-478, at 40–41 (2006). Relying upon this congressional record, the dissent in *Shelby County* described the use of MIRs as a compliance mechanism:

> the jurisdiction may modify or withdraw the proposed change. The number of such modifications or withdrawals provides an indication of how many discriminatory proposals are deterred without need for formal objection. . . . Congress [] received empirical studies finding that DOJ's requests for more information had a significant effect on the degree to which covered jurisdictions complied with their obligation to protect minority voting rights.

---

[5] *But see* doc. 68 at 5 (Voketz stating only that he "rejects the proposition that it can be considered undisputed that the CMA's three-district statutory scheme would violate Section 5 of the VRA.").

133 S. Ct. at 2639–40 (quotations and citations omitted). *See also Nw. Austin Mun. Util. Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221, 254–255 (D.D.C. 2008) (overruled on other grounds by *Nw. Austin Mun. Util. Dist. No. One. v. Holder*, 557 U.S. 193 (2009)) (citing the Congressional findings relating to MIRs, H.R. Rep. No. 109-478).

Despite the congressional record providing support for the contention that DOJ used MIRs as a means of enforcing Section 5 and that withdrawal in response to an MIR was an acceptable practice for a covered jurisdiction, Voketz argues that the defendants' decision here to withdraw the submission suggests that illegitimate political considerations, rather than compliance with the Voting Rights Act, motivated the defendants. *See* doc. 68 at 4–6. While Voketz is certainly correct that DOJ never formally rejected the council-manager plan, *see* doc. 68 at 2, Voketz overlooks the DOJ practice of using MIRs in lieu of outright denials to obtain Section 5 compliance, *see* 28 C.F.R. §§ 51.37, 51.25. Moreover, the defendants contend that they withdrew the plan because there was no additional information they could have provided in response to the MIR to demonstrate that the council-manager plan would not diminish African-American voting strength in violation of Section 5 of the Voting Rights Act.[6] *See* docs. 6-1 at 4–6, 23–26 (Declaration of

---

[6] In Voketz's supplemental briefing, he includes a motion for discovery or, in the alternative, to transfer venue. Doc. 68. The motion is due to be denied on two grounds. First, the court has

Herman Marks); Ala. Code § 11-43A-9 (mandating that the population in each of the districts be as equal as possible). Although Voketz challenges this contention by stating that he "rejects the proposition that it can be undisputed that the CMA's three-district statutory scheme would violate Section 5 of the VRA," doc. 68 at 5, it is undisputed, however, that DOJ sent the MIR in response to the submission of the council-manager plan. Based on the unrefuted evidence regarding the DOJ's use of MIRs, the court finds that the defendants have demonstrated that compliance with the Voting Rights Act factored into their decision to withdraw their request for approval of the council-manager plan. *See* doc. 51-2 at 25 (City of Decatur Resolution No. 11-019 explaining the City Council's rationale for withdrawing its approval request and resubmitting the five-member plan). Therefore, the motion to reconsider, doc. 63, is **GRANTED.**

Consequently, the court finds that the defendants acted reasonably in withdrawing the council-manager plan from consideration, and in obtaining approval instead for the redrawn five single-member district Mayor-Council plan. Moreover, because it is undisputed that the City of Decatur was subject to the still valid preclearance requirements of Section 4(b) at the time that the defendants

---

previously determined that this matter is a question of law and, therefore, "fact discovery is not required for the court to fully address this legal issue." Doc. 42 at 1. Second, as the defendants point out, *see* doc. 69 at 7, in light of *Shelby County*'s invalidation of the coverage formula in Section 4(b), a forum no longer exists to determine compliance with preclearance procedures, *see Texas v. United States*, 49 F. Supp. 3d 27, 34 (D. D.C. 2014) (finding the controversy moot in light of *Shelby County* and the fact that Texas adopted a different redistricting plan). Accordingly, Voketz's motion, doc. 68, is **DENIED.**

withdrew the request for approval of the council-manager form of government in 2012, the court concludes that, in light of *Harris*, the defendants did not err in relying on the preclearance requirements of Section 4(b) and the MIR when they determined that they were unable to implement the council-manager plan without violating the Voting Rights Act. *See Harris*, 136 S. Ct. 1310 ("The Court decided *Shelby County* . . . in 2013. Arizona created the plan at issue here in 2010. At the time, Arizona was subject to the Voting Rights Act, and we have never suggested the contrary."). Accordingly, because the defendants' failure to implement the council-manager form of government was due to the legitimate interest of obtaining preclearance under Section 4(b), their motions for summary judgment, docs. 34 & 49, are also **GRANTED**. This matter is **DISMISSED WITH PREJUDICE**, costs taxed as paid.

**DONE** the 29th day of March, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE