# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GARY VOKETZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NUMBER:** |
| | ) | **5:14-CV-00540-AKK** |
| **THE CITY OF DECATUR,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Gary Voketz brings this action for declaratory and injunctive relief against the City of Decatur, Alabama, and its city councilmembers.[1] For more than a decade, Voketz has campaigned to implement a council-manager form of government in Decatur to replace the city's current mayor-council government. Decatur voters approved the switch in a 2010 referendum, and the defendants struggled to make the transition for two years. But after concluding that then-controlling state law barred them from adopting a council-manager government without violating either the Voting Rights Act ("VRA") or the Equal Protection Clause, the defendants refused to honor the referendum.

---

[1] Several African American residents of Decatur's current majority black city council district have intervened as defendants. *See* docs. 20, 26. These intervening defendants join the city defendants in all pending motions. *See* docs. 84, 90, 91.

1

Voketz then filed this action in state court, seeking to enforce the referendum notwithstanding its potential voting rights implications. The defendants removed the case to this court using a Reconstruction Era statute creating jurisdiction over cases in which government officials refuse to take actions that might violate federal law. After rejecting Voketz's first motion for remand, the court eventually granted summary judgment in favor of the defendants. The Eleventh Circuit reversed, sending this case back to the court for further proceedings.

While that appeal was pending, however, the Alabama legislature amended the statute authorizing a council-manager government. The legislature then amended the statute again in 2019. As a result, the defendants say Voketz's claims are moot. They filed two motions to that effect, and Voketz responded with a second motion for remand. The court holds that the 2018 and 2019 amendments do not affect the court's jurisdiction over this case, but that the 2019 amendment precludes the court from granting Voketz meaningful relief. Therefore, the court will dismiss this case as moot.

## I.

The court has exhaustively, and repeatedly, described the basic facts of this case. *See* docs. 24, 48, 70. So too has the Eleventh Circuit. *See Voketz v. City of Decatur, Ala.*, 904 F.3d 902 (11th Cir. 2018). Rather than retread that ground, the

court begins its discussion of the facts from 2018, when the now relevant events occurred. That September, the Eleventh Circuit ruled that § 5 of the VRA did not prohibit Decatur from implementing the 2010 referendum. *Id.* at 910. The Circuit emphasized that the retroactivity of the Supreme Court's decision in *Shelby County v. Holder*, which gutted § 5 by ruling that the coverage formula contained in § 4(b) of the VRA was unconstitutional, was not an issue here because Voketz seeks only prospective relief. *Id.* at 908–10 (citing *Shelby*, 570 U.S. 529 (2013)). The Circuit declined, however, to rule on the validity of Decatur's other rationales for refusing to adopt a council-manager government: that doing so would violate either § 2 of the VRA, the Fourteenth Amendment's Equal Protection Clause, or state law. *Id.* at 910.

Meanwhile, in spring 2018, the Alabama legislature amended the Council Manager Act of 1982 ("CMA"), which establishes the framework for adopting a council-manager government. Doc. 88-1. Until then, the defendants had contended that implementing the 2010 referendum under the unamended CMA was impossible given Decatur's current districting scheme. *See, e.g.*, docs. 1, 4, 34. Decatur now has five city councilmembers elected from five single-member districts. Doc. 13 at 3. In one district, African Americans comprise the voting-age majority. *Id.* But the unamended CMA required municipalities adopting a council-manager government to instead have three councilmembers elected from single-member districts and two elected at large. *Id.* According to the defendants, moving to three single-member

districts required eliminating the African American majority district, potentially violating § 2 of the VRA by diluting minority voting power. *Id.* at 4. That was because another CMA provision required that the voting districts "contain[] as nearly an equal number of people as possible." *Id.*; Ala. Code § 11-43A-9. Decatur's black voting-age population was allegedly too small and geographically dispersed for the defendants to comply with both these provisions of the unamended CMA.

The 2018 CMA amendment resolved these problems by increasing the required number of single-member districts from three to either four or six. It provided, "If a municipality has single-member districts for the election of council members when the council-manager form of government is adopted in the municipality, the municipality shall continue with either four or six council members elected from single-member districts and the mayor shall be elected at large." Doc. 88-1 at 4. Moreover, the 2018 amendment empowered municipalities to adopt a council-manager government "by resolution of the council," without any referendum. *Id.* at 3. These changes applied "[n]otwithstanding any other provision" of the CMA. *Id.* The amendment thus freed the defendants from the need to eliminate Decatur's African American majority voting district, potentially obviating any voting rights concerns.

Voketz recognized as much. In June 2018, while his case pended on appeal, Voketz's lawyers wrote to the defendants explaining the import of the 2018 CMA

amendment. Doc. 88-2. As they put it, "The amendment cures the defects that the city's attorneys have alleged exist in the law that have prevented implementation after the voters passed the referendum . . . . The Section Two [of the VRA] arguments that the city has made centered around having only three council districts are now moot." Doc. 88-2 at 3. The lawyers concluded that "[t]he legislature has provided a way to bring this matter to a conclusion and allow the majority vote of the citizens of Decatur that approved the Council Manager Act to be honored." *Id.*

But the legislature amended the CMA again in June 2019. That amendment retained the revised districting requirements of the preceding year's amendment while changing the procedures for approving a transition to a council-manager government. First, it reimposed the rejected referendum requirement, eliminating a municipality's authority to adopt a council-manager government. *See* doc. 88-3 at 3–4; Ala. Code § 11-43A-1.1. Second, it dictated new guidelines for conducting the referendum. Under the 2019 amendment, any ballot initiative proposing that a municipality adopt a council-manager government "shall indicate the composition of the mayor and council should the council-manager form of government be adopted." Doc. 88-3 at 4; § 11-43A-1.1. In other words, the question on the ballot must now specify how many members of a municipality's city council—in this case, either four or six—will be elected from single-member districts.

In light of these amendments, the defendants filed a motion for judgment on the pleadings, contending that the CMA amendments rendered this action moot. Doc. 82. For his part, Voketz filed a "renewed" motion for remand. Doc. 86. The defendants then moved for summary judgment, again contending that undisputed material facts establish that the action is moot. Doc. 88. The court will first rule on Voketz's motion for remand before determining whether this matter is moot.

## II.

The defendants removed this case to this court under 28 U.S.C. § 1443(2), which the court addressed in its order denying Voketz's first motion for remand. Doc. 24. As explained then, § 1443(2) enables government officials to remove matters to federal court when a "colorable conflict between state and federal law" causes their "refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law." *Id.* at 7 (quoting *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir. 1995)). "That good faith belief is tested objectively, in that the claim to that effect of the removing defendant must be 'colorable.'" *Id.* (quoting *White v. Wellington*, 627 F.2d 582, 587 (2d. Cir. 1980)).

In concluding that § 1443(2) removal applied here, the court observed that the defendants' allegations "clearly state a colorable conflict between state and federal law" because the defendants allege that implementing the results of the 2010

referendum would be impossible without violating federal law. *Id.* at 11. In particular, the defendants allege that implementing the 2010 referendum would have violated either § 2 of the VRA by impermissibly diluting African American voting power in the city, or the Equal Protection Clause by creating voting districts with impermissible population deviations. *Id.* Because those allegations established a colorable conflict between state and federal law, the court denied the motion to remand. The court also acknowledged that removal under § 1443(2) is seldom invoked because the statute has historically been limited to "state officers, and those acting with or for them including local and municipal officers. These ordinarily prefer to litigate in the state court." *Id.* at 7 n.2 (quoting *White*, 627 F.2d at 585–86).

The relative obscurity of this removal statute appears to have led Voketz to misunderstand its relationship with supplemental jurisdiction under 28 U.S.C. § 1367. Voketz "request[s] that this Court decline to exercise its supplemental jurisdiction over the questions of state law presented in the defendants' [motions], as allowed under 28 U.S.C. § 1367(c)(1)," and therefore order remand. Doc. 86 at 2 ¶ 6. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, if a claim based on state

law was sufficiently related to a claim falling within the court's original jurisdiction, the court could exercise supplemental jurisdiction over the state law claim. Federal courts have discretion, however, under § 1367(c) to decline to exercise supplemental jurisdiction if, among other factors, an additional claim "raises a novel or complex issue of State law." § 1367(c)(1).

Seizing on that exception, Voketz asserts that the defendants' reliance on two "newly enacted Alabama statutes" in their pending motions introduces a "novel issue" implicating § 1367(c)(1). Doc. 86 at 2 ¶ 7. But Voketz overlooks that this case presents only one claim, and it falls within the court's original—not supplemental—jurisdiction. Voketz's single claim, admittedly brought under state law, is that the defendants have unlawfully refused to implement the results of an election. The defendants in turn raised the specter of a quandary—a colorable conflict between state and federal law and their belief that compliance with the state law would cause them to violate federal law. In doing so, the defendant's made the case removable under § 1443(2). Removed cases fall within this court's original jurisdiction. *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 452 (1943); 14C Wright & Miller, Federal Practice & Procedure: Jurisdiction § 3721 (4th ed. 2020). To be sure, the defendants' pending motions implicate state law issues. But that does not establish a separate state law claim triggering supplemental jurisdiction. Accordingly, because the court

has not exercised supplemental jurisdiction in this case, it cannot "decline to exercise" that jurisdiction.

Likewise, Voketz's reliance on *Baggett v. First National Bank of Gainesville* for the proposition that a state court "should be the final arbiter[] of [this] state law" is misplaced. Doc. 86 at 2 ¶ 7 (quoting 117 F.3d 1342, 1353 (11th Cir. 1997)). In *Baggett*, the Eleventh Circuit affirmed and adopted a district court opinion declining to exercise supplemental jurisdiction over state law claims remaining after the district court dismissed the plaintiffs' underlying federal question claim. 117 F.3d at 1352. With the federal claim dismissed, resolution of the plaintiffs' remaining state law claims depended exclusively "on determinations of state law." *Id.* at 1353. The district court therefore ruled that considerations of "judicial economy, fairness, convenience, and comity dictate[d] having these state law claims decided by the state courts." *Id.* But because original jurisdiction applies here, rather than supplemental jurisdiction, those prudential considerations do not apply. *See White*, 627 F.2d at 586 ("[T]he right to remove [under § 1443(2)] is statutory, jurisdictional and absolute, regardless of motivation, when it is found to exist."). Therefore, because Voketz does not allege that the court has lost removal jurisdiction over this matter in light

9

of the state law amendments in 2018 and 2019,[2] Voketz's renewed motion for remand is due to be denied.

### III.

Although the colorable conflicts between state and federal law in this case authorize jurisdiction under § 1443(2), more familiar jurisdictional constraints also apply. As "courts of limited jurisdiction," federal courts can hear only matters involving "enumerated categories of 'Cases' and 'Controversies.'" *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The three "strands" of this "case-or-controversy requirement" include standing, ripeness, and mootness. *Id.* (quoting *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)).

The defendants challenge the court's ability to hear this case based on mootness. The mootness doctrine "derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004). A case becomes moot once it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.*

---

[2] Nor could he take such a position because the court determines jurisdiction at the time of removal. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007).

This can occur due to either "a change in circumstances" or "a change in the law." *Coral Springs St. Sys., Inc. v. City of Sunrise, Fla.*, 371 F.3d 1320, 1328 (11th Cir. 2004). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Id.*

## A.

Before determining whether this case is moot, the court must address a related procedural issue. The defendants assert their mootness challenge through a motion for summary judgment.[3] Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). However, challenges to subject matter jurisdiction are "appropriately dealt with by means of a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1)." *Troiano*, 382 F.3d at 1278 n.2. The Eleventh Circuit has thus "repeatedly" admonished district courts for "mistakenly" disposing of cases on "justiciability (mootness) grounds" by summary judgment. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). Instead, a district court should treat a motion for summary judgment based on mootness as a motion to dismiss for

---

[3] In addition to their motion for summary judgment, the defendants submitted a motion for judgment on the pleadings. Doc. 82. Because the defendants make the same arguments related to mootness in their motion for judgment on the pleadings, the court considers both motions together while referencing only the motion for summary judgment.

11

lack of subject matter jurisdiction. *See id.* (treating a district court's ruling on summary judgment "as if it was a ruling on a motion to dismiss"); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253 n.2 (11th Cir. 2010) (same). Accordingly, the court construes the defendants' motion as one for lack of subject matter jurisdiction under Rule 12(b)(1).[4]

Challenges to subject matter jurisdiction under 12(b)(1) are either "facial" or "factual." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). In a facial attack, the defendant challenges jurisdiction "based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). The plaintiff thus receives "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

Factual attacks, in contrast, "challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison*, 323 F.3d at 925 n.5. District courts can

---

[4] The Eleventh Circuit has "cautioned, however, that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison*, 323 F.3d at 925 (alteration and quotation omitted). If jurisdictional facts implicate the underlying merits, then the district court should find that jurisdiction exists and proceed to address the merits under either Rule 12(b)(6) or Rule 56. *Id.* But because the defendants' challenge is based "on mootness grounds solely," their motion does not implicate the underlying merits, and the court will proceed under Rule 12(b)(1). *Smith v. Morgan*, No. 5:18-CV-01111-AKK, 2019 WL 1930764, at *3 (N.D. Ala. May 1, 2019).

therefore consider "extrinsic evidence" when resolving a factual attack. *Id.* Moreover, if a defendant properly asserts a factual attack, then a court need not presume the truthfulness of the plaintiff's allegations, and the presence of disputed material facts will not bar a court from evaluating the merits of a jurisdictional issue. *Id.* at 925 (citing *Lawrence*, 919 F.2d at 1529). Finally, a district court resolving a factual attack may dismiss a case for lack of subject matter jurisdiction based on either "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).[5]

The defendants contend that Voketz's claims are moot because, in the decade since the 2010 referendum, the Alabama legislature has twice amended the CMA. Because the defendants rely on extrinsic evidence—exhibits attached to their motion for summary judgment—to support their contentions, this case presents a factual attack on subject matter jurisdiction. *See Morrison*, 323 F.3d at 925 n.5; *Smith v. Morgan*, No. 5:18-CV-01111-AKK, 2019 WL 1930764, at *3 (N.D. Ala. May 1, 2019). Therefore, the court will consider both the complaint and the defendants'

---

[5] Decisions of the former Fifth Circuit announced before October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

extrinsic evidence, which is undisputed, while analyzing mootness. *See Williamson*, 645 F.2d at 413.

**B.**

To review, a case is moot when the court can no longer provide the plaintiff "meaningful relief," causing the case to fall short of the Constitution's case or controversy requirement. *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1086 (11th Cir. 2004). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000)). Therefore, if events that occur after a lawsuit is filed "deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Id.* Such mootness-triggering events include "[w]hen a subsequent law brings the existing controversy to an end." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000). Put differently, "federal courts lack jurisdiction to hear and decide cases where changes in the law have rendered the case moot." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (per curiam).

The court must decide whether the CMA amendments preclude it from granting meaningful relief in this case. Voketz seeks declaratory and injunctive relief

to "redress the Defendants' refusal to honor the results of [the 2010 referendum] or to allow those results to be honored." Doc. 31 at 1–2 ¶ 1. The defendants say the 2018 amendment mooted those claims by requiring municipalities approving a council-manager government to adopt either four or six single-member voting districts. Doc. 89 at 3. Allegedly, that requirement "prohibit[s] Decatur from adopting the 3–2 format" of council-manager government required under the unamended CMA. *Id.*

That change does not alone deprive the court of jurisdiction. The 2010 referendum did not by its terms mandate a city council with three members elected from single-member districts and two elected at large. Rather, the referendum provided only that the council-manager form of government would be adopted "as provided by the [CMA]." *See* doc. 86 at 2 ¶ 4. As Voketz observed in his June 2018 letter to the defendants, doc. 88-2, the first CMA amendment therefore gave the defendants more flexibility to implement the referendum. Under that amendment, the defendants could adopt by resolution a council-manager government with up to six single-member districts. Thus, had time stopped in 2018, then the court would clearly be able to provide Voketz meaningful relief—an injunction ordering the defendants to implement a council-manager government with either four or six single-member districts. But time continued and so did the legislature.

Although the ambiguity in the 2010 referendum's ballot language was an asset in 2018, it became a liability the next year. That ambiguity conflicts with the provisions of the 2019 CMA amendment, which imposed a new ballot restriction on the referendum process. The CMA now provides that "[t]he question on the ballot shall indicate the composition of the mayor and council should the council-manager form of government be adopted." Ala. Code § 11-43A-1.1. As explained, the 2010 referendum did not comply with this provision because it did not indicate the composition of Decatur's proposed council-manager government. The defendants thus contend that the court cannot "order Decatur to implement the results of a referendum election that did not comply with current state law." *Id.*

The court agrees. After Alabama's 2019 CMA amendment, the court cannot provide Voketz meaningful relief. That amendment mandates that Decatur residents decide for themselves whether they will have either four or six councilmembers elected from single-member districts. The legislature's rapid intervention in 2019 to reimpose the referendum requirement after the 2018 amendment jettisoned it, presumably by accident, demonstrates that the CMA commits this question to the voters. As does the statute's text, which again commands that the question of council composition "shall" be included on the ballot. Ala. Code § 11-43A-1.1; *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting that the "mandatory 'shall[]' . . . normally creates an obligation impervious

16

to judicial discretion"). The court will not—indeed, cannot—order the defendants to implement a council-manager government without voter input on this key issue. Ruling otherwise would undermine both "the important limitations placed on the power of the federal judiciary" and "long-established notions about the role of unelected courts in our democratic system." *Nat'l Advert. Co.*, 402 F.3d at 1332.

Voketz briefly responds to the mootness argument in his renewed motion for remand. He essentially contends that the 2018 and 2019 amendments did not alter the CMA provisions that governed ballot language in council-manager referendums when Decatur's voters approved the switch in 2010. *See* doc. 86 at 2 ¶¶ 4–5. Under the unamended CMA, the referendum ballot needed to ask only, "Shall the council-manager form of government as provided by the Council-Manager Act of 1982 be adopted for the municipality of [Decatur]?" *Id.*; Ala. Code § 11-43A-5. According to Voketz, "[n]either the 2018 nor the 2019 amendments to the CMA changed the language of this statute." Doc. 86 at 2 ¶ 5. True, neither amendment explicitly changed that statutory text, but the amended CMA dictates that its terms apply "[n]otwithstanding any other provision" of the CMA. Ala. Code § 11-43A-1.1. Voketz's argument is therefore unavailing.

**IV.**

To close, dismissal is warranted here because this case is moot in light of the 2019 amendments to the CMA. This result may appear unfair to Voketz and the Decatur citizens who approved a council-manager government. From their perspective, the defendants, though well-meaning, have essentially ignored the results of an election. But federal courts "strictly observe the cases or controversy limitation." *Nat'l Advert. Co.*, 402 F.3d at 1332. The Supreme Court has explained that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Because recent legal changes have rendered the court "incapable of granting [Voketz] any of the relief requested" in his amended complaint, any judgment on the merits of this matter would be an impermissible advisory opinion. *Nat'l Advert. Co.*, 402 F.3d at 1335. This case is thus due to be dismissed as moot. The court will issue a separate order in accordance with this Memorandum Opinion.

**DONE** the 15th day of September, 2020.

                                                    **ABDUL K. KALLON**
                                           UNITED STATES DISTRICT JUDGE